## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2019, 11:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz &
Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michelle R. Tollefson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

November 13, 2019

Court of Appeals Case No. 19A-CR-1168

Appeal from the Dearborn Superior Court

The Honorable Jonathan N. Cleary, Judge

Trial Court Cause No. 15D01-1810-F1-3

**Baker, Judge.**

[1] Michelle Tollefson appeals the twenty-one-year sentence imposed by the trial court after Tollefson pleaded guilty to Level 2 felony dealing in methamphetamine in excess of ten grams, arguing that the sentence is inappropriate in light of the nature of the offense and her character. Finding that the sentence is not inappropriate, we affirm.

## Facts

[2] On July 3, 2018, Tollefson and Brent Lutz traveled to Cincinnati to purchase methamphetamine after their supply, which they had been using that day and the night before, ran out. When they arrived in Cincinnati, Tollefson watched Lutz approach a person she did not know and purchase something. She then saw Lutz snort the substance he had purchased, which they both believed to be heroin, but was actually fentanyl. Shortly thereafter, they met their contact and purchased fourteen grams of methamphetamine; both Lutz and Tollefson used some of the methamphetamine and then returned to Tollefson's apartment in Dearborn County.

[3] After they arrived at Tollefson's apartment, she gave Lutz a "couple of Percocet's [sic]," for which she did not have a prescription. Tr. Vol. II p. 26. Later, Lutz went outside to smoke a cigarette and Tollefson took a shower. While in the shower, Tollefson heard a noise. She went outside the apartment and found that Lutz had passed out, face planting onto a chair. There was vomit on the concrete near where Lutz had fallen, and Lutz was making a noise that sounded like he was crying. Tollefson tried to move Lutz, but she was

unable to do so by herself, so she called a friend for help. Together, they moved Lutz into the living room, where they laid him on the floor. She pushed Lutz onto his side so that he could breathe and placed a pillow under his head to keep his airway open.

[4] Tollefson waited with Lutz for approximately thirty minutes and then slept for a couple of hours. When Tollefson awoke, Lutz was still on the living room floor and was making snoring sounds. Tollefson went to work around 5:30 a.m. that morning and, when she returned home around 3:30 that afternoon, Lutz was dead. Tollefson called 911. Medical personnel examined Lutz's body. It was in a state of lividity, there was black pooling on his back, and he had maggots and insect eggs in his eyes. The autopsy later established that Lutz died of a mixed drug overdose. He had fentanyl, methamphetamine, amphetamine, and oxycodone (Percocet) in his system.

[5] Law enforcement arrived with emergency responders, but Tollefson refused to consent to a search. The officers then applied for a search warrant. While awaiting the warrant, the officers spoke with Tollefson, who admitted that she had deleted several text messages from her phone that were related to drug transactions. Initially, Tollefson denied that Lutz had a cell phone, but later in the interview, she admitted that he did and pulled it out of her pocket. After police obtained a search warrant, they searched Tollefson's residence. They found fourteen grams of methamphetamine, several Percocet pills, a smoking device, a digital scale, and plastic baggies, among other things.

[6]     Police officers arrested Tollefson, who was interviewed again on July 5, 2018. She admitted that she dealt methamphetamine to a "small number of people" and that she regularly traveled to Cincinnati to purchase methamphetamine, which she brought home to Dearborn County and sold. *Id.* at 24.

[7]     On October 29, 2018,[1] the State charged Tollefson with Level 1 felony dealing in a controlled substance resulting in death, Level 2 felony dealing in methamphetamine in excess of ten grams, Level 5 felony dealing in a narcotic, Level 6 felony obstruction of justice, Level 6 felony possession of a narcotic, and Class C misdemeanor possession of paraphernalia. On March 11, 2019, Tollefson pleaded guilty to the Level 2 felony charge in exchange for the dismissal of the remaining charges; sentencing was left to the trial court's discretion.

[8]     The trial court held a sentencing hearing on April 26, 2019. The trial court found the following mitigating circumstances: (1) Tollefson pleaded guilty; (2) she had a dependent son; and (3) she expressed remorse for her conduct. It also found the following aggravating factors: (1) Tollefson's criminal history and history of probation violations; (2) the "heinous" nature of the offense; and (3) the substantial damage done to others as a result of the offense. *Id.* at 104. The trial court denied Tollefson's request that she be recommended for

---

[1] It is unclear from the record why there was a lengthy delay between Tollefson's initial arrest and the filing of criminal charges against her.

Purposeful Incarceration and sentenced her to twenty-one years, with two years suspended to probation. Tollefson now appeals.

## Discussion and Decision

Tollefson's sole argument on appeal is that the sentence is inappropriate in light of the nature of the offense and her character pursuant to Indiana Appellate Rule 7(B). We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

Tollefson was convicted of one Level 2 felony, for which she faced a sentence of ten to thirty years, with an advisory term of seventeen and one-half years. Ind. Code § 35-50-2-4.5. The trial court imposed a twenty-one-year sentence, with two years suspended to probation, meaning that Tollefson faces an executed sentence that is slightly longer than an advisory term.

With respect to the nature of the offense, Tollefson contributed to the death of a close friend while involved in drug dealing activities. Over a twenty-four-hour period, she smoked methamphetamine with Lutz at her apartment, travelled to Cincinnati, where they purchased additional methamphetamine for her to sell, witnessed Lutz snort what she believed to be heroin, and traveled back to her residence, where she provided Lutz with Percocet in the hours before he lost

consciousness and then died of an overdose. Moreover, the night before his death, Lutz passed out, vomited, and was making a crying noise. Tollefson was concerned enough about Lutz's breathing that she propped his head on a pillow to protect his airway, but evidently not concerned enough to seek medical assistance. We infer that she was reluctant to open her residence to the presence of medical and law enforcement personnel, given the readily apparent drug use and dealing activity in the apartment. By the time she finally called 911, Lutz had been dead for so long that he had black pooling in his back and maggots in his eyes. We do not find that the nature of the offense renders the sentence inappropriate.

[12] With respect to Tollefson's character, we acknowledge, as did the trial court, that she pleaded guilty (though she reaped a substantial benefit in return with the dismissal of many other charges), expressed sincere remorse, and has a dependent son. But we must also examine her criminal history, which includes convictions for theft and operating a vehicle while intoxicated. She also entered into a diversion program for a possession of paraphernalia charge prior to those offenses. Moreover, these previous convictions led to four probation violations, including multiple violations for positive drug screens, which led to the revocation of probation in both cases. She also has prior arrests for Level 5 felony dealing in a narcotic drug and Level 6 felony unlawful possession of a syringe, and admitted to police that in addition to dealing methamphetamine, she also dealt heroin for a lengthy period of time. She continues to drive out of state to purchase methamphetamine, which she then introduces into her

community in Dearborn County. Despite Tollefson's many drug-related contacts with the criminal justice system, she is unwilling or unable to reform her behavior to comport with the rule of law. We do not find that Tollefson's character renders the sentence inappropriate.

[13] We acknowledge the insidiousness of addiction, and in general, we agree that programs such as Purposeful Incarceration[2] benefit all of society, including both the defendant and the criminal justice system. We encourage trial courts to utilize such programs whenever possible, and question why the trial court denied Tollefson this opportunity. That said, when engaging in a Rule 7(B) analysis, we believe it exceeds our authority to examine the defendant's placement in a particular program, as opposed to the length of the sentence. *See Miller v. State*, 105 N.E.3d 194, 197 (Ind. Ct. App. 2018) (a defendant's "placement within a particular program [including Purposeful Incarceration] is not an issue subject to this court's review"). Therefore, while we encourage the trial court here to reexamine Tollefson's case to consider recommending Purposeful Incarceration, we decline to order that such action be taken.

---

[2] Purposeful Incarceration is a cooperative project between the Department of Correction (DOC) and Indiana's trial courts. With this program, the DOC "works in collaboration with Judges who can sentence chemically addicted offenders and document that they will 'consider a sentence modification' should the offender successfully complete an IDOC Therapeutic community. This supports the [DOC] and the Judiciary to get addicted offenders the treatment that they need and work collaboratively to support their successful re-entry into society." Ind. Dep't of Corr., Purposeful Incarceration, https://www.in.gov/idoc/2798.htm (last visited October 30, 2019).

[14] In sum, we find that the sentence imposed by the trial court is not inappropriate in light of the nature of the offense and Tollefson's character.

[15] The judgment of the trial court is affirmed.

Kirsch, J., and Crone, J., concur.